IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (949) 991-0381 | Case No. 2:22-mj-172-KFW<br><br>**Filed Under Seal** |
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (714) 927-6387 | Case No. 2:22-mj-172-KFW<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Michael Gagnon, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (949) 991-0381 with listed subscriber(s) unknown ("Target Phone 1")[1], whose service provider is **Verizon Wireless**, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey 07921. Target Phone 1 is described herein and in Attachment A-1, and the location information to be seized is described herein and in Attachment B-1.

2.  I also make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (714) 927-6387 ("Target Phone 3") with listed subscriber Katy Pau, at 1020 W 1st St. Santa Ana, CA, whose service provider is **T-**

---

[1] Verizon has provided no information on the identity of the listed subscriber of the Target Phone, and has indicated in substance, that such information is held by a reseller that sells telephone numbers/devices that operate over Verizon Wireless' cellular network. Accordingly, the listed subscriber and IMEI/ESN device numbers of the Target Phone are currently unknown.

**Mobile**, a wireless telephone service provider headquartered at 4 Sylvan Way Parsippany, NJ 07054. Target Phone 3 is described herein and in Attachment A-2, and the location information to be seized is described herein and in Attachment B-2.

3. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am a Special Agent ("SA") with the Drug Enforcement Administration ("DEA"), an agency of the U.S. Department of Justice. I have been so employed since January 2012. I Joined the DEA Portland Resident Office in 2018. I was assigned to the Los Angeles Division from 2012 until I was assigned to Portland. Prior to attaining sworn status as a SA, I was employed by DEA and received specialized training in narcotics trafficking investigations and related legal matters at the DEA Training Academy in Quantico, Virginia. Before joining DEA, I was employed by the Newton Police Department in Newton, New Hampshire, from June 2009 to January 2012. During my employment with the Newton Police Department, I was a certified Peace Officer in the state of New Hampshire. I have received law enforcement training through the Police Standards and Training Council.

4. In the course of my employment with DEA, I have received approximately 17 weeks of training at the DEA Academy in Quantico, Virginia about techniques used by major narcotics traffickers. I have specialized training involving the use, possession, packaging, manufacturing, sales, concealment, and transportation of various controlled substances, money laundering techniques, and conspiracy investigations. Additionally, I have attended specialized training in wire and electronic interceptions and the use of wire and electronic interception equipment.

5.  During my employment with DEA, I have participated in narcotics investigations both as a case agent and in a supportive role. I have participated in the arrests of multiple drug traffickers and in interviewing informants and suspects concerning the methods and means of drug traffickers. I have also participated in countless static and mobile surveillance activities and assisted in the execution of multiple search warrants and arrest warrants. I have conducted investigations regarding these unlawful activities, violations of Sections 841(a)(1), 843(b), 846, 952(a), and 963 of Title 21 of the United States Code, and Sections 2, 1952, 1956, and 1957 of Title 18 of the United States Code. As a DEA agent, I primarily investigate large-scale narcotics traffickers and money laundering organizations.

6.  Based on my training and experience as a DEA special agent and Police Officer, I have become familiar with the criminal activities of individuals involved in drug trafficking organizations ("DTOs"), including drug manufacture and distribution, money laundering, and unlawful use/possession of firearms. I have also become familiar with the methods used by such individuals to avoid detection by law enforcement, including the use of: multiple cellular telephones, including those subscribed to in the names of other persons; prepaid cellular telephones; counter-surveillance techniques; coded and ambiguous language; multiple vehicles; vehicles equipped with concealed compartments; and false identities.

7.  The facts in this affidavit and the attached exhibits come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8.  Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21 United States Code Sections 841, 843, 844, and 846 have been committed,

are being committed, and will be committed by Andrea Distel, an individual who uses Target Phone 3, and others both known and unknown. There is also probable to believe that Distel and has used and will continue to use Target Phone 1 in furtherance of those crimes, and that the individual who uses Target Phone 3 has used and will continue to use Target Phone 3 in furtherance of those crimes. There is also probable cause to believe that the location information described in Attachment B-1 and Attachment B-2 will constitute evidence of these criminal violations and will lead to the identification of the users of Target Phone 1 and Target Phone 3, and other individuals who are engaged in the commission of these offenses.

9. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PRIOR RELATED SEARCH WARRANTS

10. On April 5, 2022, U.S. District Judge Lance E. Walker issued a search warrant (the "April 5 Warrant") authorizing a search of Four Cell Phones Seized from a motel room in Saco, Maine on February 8, 2022. See *In the Matter of Four Cell Phones Seized on February 8, 2022, in Saco, Maine*, No. 2:22-mj-00056-LEW. I incorporate herein as Exhibit 1 my affidavit submitted in support of the April 5 Warrant.

11. On June 29, 2022, U.S. Magistrate Judge Karen Frink Wolf, of the District of Maine, issued a Search Warrant (the "June 29 Text Warrant") authorizing the search and seizure of text message content pertaining to Target Phone 1. *See In The Matter Of The Search Of Information Associated With (949) 991-0381 That Is Stored At Premises Controlled By Verizon*

*Wireless*, ECF No. 2:22-mj-104-KFW. I incorporate herein as Exhibit 2 my affidavit submitted in support of the June 29 Text Warrant.

12. On June 29, 2022, Magistrate Frink Wolf also issued search warrant (the "June 29 Cell Site/GPS Warrant") authorizing the search and seizure of data concerning the location of Target Phone 1 beginning on June 29, 2022, for a period of 30 days. *See In the Matter of the Search of the Telephone Assigned Call Number (949) 991-0381,* ECF No. 2:22-mj-105-KFW.

13. On July 29, 2022, Magistrate Frink Wolf issued a Search Warrant (the July 29 Text Warrant") authorizing the search and seizure of text message content pertaining to Target Phone 1. *See In The Matter Of The Search Of Information Associated With (949) 991-0381 That Is Stored At Premises Controlled By Verizon Wireless*, ECF No. 2:22-mj-127-KFW. I adopt and incorporate herein as Exhibit 3 the affidavit of DEA Task Force Officer Thomas LaPierre submitted in support of the July 29 Text Warrant.[2]

14. On July 29, 2022, Magistrate Frink Wolf issued a search warrant authorizing the continued seizure of data from Verizon Wireless concerning the location of Target Phone 1. *See in the Matter of the Search of Information Associated with Cellular Telephone Number (949) 991-0381*. No. 2:22-mj-128-KFW.

15. On August 1, 2022, Magistrate Frink Wolf issued a search warrant (the "August 1 Vehicle Tracking Warrant") authorizing the installation and use of a tracking device on a Green Ford Green 2021 Ford Ranger, Maine License Plate Number 911AJS, VIN # 1FTER4FH9MLE02295 (the "TARGET VEHICLE"). *See In The Matter Of The Tracking Of*

---

[2] I have been advised by a Verizon Wireless employee, in substance, that due to a technical problem with the company's electronic record keeping system, Verizon Wireless is unable to provide any responsive text messages in relation to the July 29 Text Warrant.

*Green 2021 Ford Ranger, Maine License Plate Number 911AJS, VIN # 1FTER4FH9MLE02295*, ECF No. 2:22-mj-128-KFW. I incorporate herein as Exhibit 4 the affidavit of DEA Task Force Officer Thomas LaPierre submitted in support of the August 1 Vehicle Tracking Warrant.[3]

16. On August 11, 2022, United States Magistrate Judge Andrea Johnstone, of the District of New Hampshire, issued a search warrant (the "August 11 Vehicle Tracking Warrant") authorizing the installation and use of a tracking device on a Green Ford Green 2021 Ford Ranger, Maine License Plate Number 911AJS, VIN # 1FTER4FH9MLE02295 (the "TARGET VEHICLE"). *See In The Matter Of The Tracking Of Green 2021 Ford Ranger, Maine License Plate Number 911AJS, VIN # 1FTER4FH9MLE02295*, ECF No. 22-mj-182-01-AJ. I incorporate herein as Exhibit 5 the affidavit of DEA Task Force Officer Thomas LaPierre submitted in support of August 11 Vehicle Tracking Warrant.

17. On August 17, 2022, United States Magistrate Judge Nivison issued a Search Warrant (the "August 17 Text Warrant") authorizing the search and seizure of text message content pertaining to Target Phone 1. *See In The Matter Of The Search Of Information Associated With (949) 991-0381 That Is Stored At Premises Controlled By Verizon Wireless*, ECF No. 2:22-mj-00143-JCN. I incorporate herein as Exhibit 6 the affidavit of DEA Task Force Officer Thomas LaPierre submitted in support of the August 17 Text Warrant.

18. On September 1, 2022, United States Magistrate Judge Nivison issued a Search Warrant (the "September 1 Text Warrant") authorizing the search and seizure of text message content pertaining to the Target Phone. *See In The Matter Of The Search Of Information*

---

[3] The August 1, 2021 Vehicle Tracking Warrant was not executed because the TARGET VEHICLE left the District of Maine, and was subsequently located in the District of New Hampshire. As noted above, the District of New Hampshire issued a new Vehicle Tracking Warrant for the TARGET VEHICLE on August 11, 2022, and the device was installed on the TARGET VEHICLE that day.

*Associated With (949) 991-0381 That Is Stored At Premises Controlled By Verizon Wireless*, ECF No. 2:22-mj-00150-JCN. I incorporate herein as Exhibit 7 the affidavit of DEA Task Force Officer Thomas LaPierre submitted in support of the September 1 Text Warrant.

19. On September 1, 2022, Magistrate Karen Frink Wolf issued a search warrant authorizing the seizure of data from Verizon Wireless concerning the location of Target Phone 1. *See in the Matter of the Search of Information Associated with Cellular Telephone Number (949) 991-0381*. No. 2:22-mj-151-KFW.

20. On September 9, 2022, Magistrate Karen Frink Wolf issued a search warrant (the "September 9 Warrant") authorizing the search and seizure of FedEx parcel addressed to Joey Doucette bearing tracking number 277766338777. *See In the Matter of the Search of a Parcel Addressed to Joey Doucette Bearing Tracking Number 277766338777*, No. 2:22-Mj-154-Kfw. I incorporate herein as Exhibit 8 my affidavit submitted in support of the September 9 Warrant.

21. On September 13, 2022, Magistrate Karen Frink Wolf issued search warrant (the "September 13 Warrants") authorizing searches of two storage units in Scarborough, Maine, and of a trailer/camper home at 137 Lynne, Street, Van Buren, Maine. *In the Matter of the Search of the Premises of Trailer Home Behind 137 Lynne Street, Van Buren, Maine* and *In the Matter of the Search of Unit 218 Unit 1009 at Pride Storage Solutions, 192 Innovation Way, Scarborough, Maine*. Nos. 1:22-Mj-155-KFW and 2:22-mj-156-KFW. I incorporate herein as Exhibit 9 my affidavit submitted in support of the September 13 Warrants.

22. On September 15, 2022, United States Magistrate Judge Karen Frink Wolf issued Search Warrants (the "September 15 Text Warrants") authorizing the search and seizure of text message content pertaining to Target Phone 1 and telephone number (207) 498-9754 ("Target Phone 2"). *See In The Matter Of The Search Of Information Associated With (949) 991-0381*

*That Is Stored At Premises Controlled By Verizon Wireless*, ECF No. 2:22-mj-00161-KFW and *In the Matter Of the Search of Information Associated with (207) 498-9754 that is Stored at the Premises of US Cellular*, ECF 162-KFW. I incorporate herein as Exhibit 10 my affidavit submitted in support of the September 15 Text Warrants.

## PROBABLE CAUSE

23.     The DEA and the United States Postal Inspector General are conducting a criminal investigation of Andrea Distel, Luis Martinez, Joseph Doucette and others regarding violations of Title 21, United States Code, Sections 841, 843, 844, and 846 (distribution of controlled substances, possession with intent to distribute controlled substances, use of communications facility to facilitate a controlled substances offense, possession of controlled substances, and conspiracy to possess and distribute controlled substances). Based on this investigation, I believe that Martinez, Distel, and Doucette, and others, have been involved in a conspiracy to distribute methamphetamine in Maine. The investigation is further detailed in Exhibits 1-10 which are attached hereto. In addition, I believe that Distel has used, is currently using, and will continue to use Target Phone 1, and that an as yet unidentified individual has used Target Phone 3 to engage in communications regarding drug trafficking, and in furtherance of the above referenced crimes.

24.     As set forth in Exhibits 8 and 9, there is probable cause to believe that Distel and others arranged to send a parcel containing methamphetamine and fentanyl (hereinafter, the "Parcel") from California to Joey Doucette at 137 Lynne Street, Van Buren, Maine via FedEx. As detailed in Exhibit 9, the Parcel was intercepted by law enforcement on September 9, 2022. Upon searching the Parcel was found to contain methamphetamine and fentanyl, which was confirmed as such through field testing with a Tru Narc device. Exhibits 8 and 9 also set forth

probable cause to believe that Distel and Doucette previously used Target Phones 1 and 2 to engage text message communications regarding controlled substance trafficking, including communications about sending parcels containing controlled substances.

25. As further detailed in Exhibit 9, the Parcel was addressed to "Joey Doucette," at 137 Lynne Street, Van Buren, Maine, 04785. FedEx records further showed that the Shipper's name was listed as "Blanca Orozco" at 1020 W First, Santa Ana, CA, 92703. I also learned that the shipper input their address city as Santa Ana CA.[4] FedEx records also showed that the shipper's telephone number was listed as (714) 927-6387 (Target Phone 3) and that the package was received by FedEx at approximately 4:45 p.m.

26. I have reviewed data obtained pursuant to the September 15 Text Message Warrant as to Target Phone 1. As set forth below, this data reveals that Distel, Doucette, and the as-yet unidentified user of Target Phone 3 engaged in a series of communications related to the Parcel sent to Doucette. Based on the seized text messages, as well as information obtained from FedEx, I believe that the individual who uses Target Phone 3 sent the Parcel to Doucette at Distel's request and/or direction. In addition, the text messages indicate that the individual who uses Target Phone 3 has sent other parcels at Distel's request. Accordingly, I believe that, along with Distel, Doucette, and others, the user of Target Phone 3 has conspired to send methamphetamine and fentanyl from California to Maine for the purposes of distribution.

27. Data obtained pursuant to the September 15 Text Warrants shows that on September 8, 2022, at approximately 4:50 pm, an MMS message was sent to Target Phone 1

---

[4] In my affidavit submitted in support of the September 9 Warrant, I noted that information obtained from FedEx showed that the Parcel was shipped from "Fullerton, California." Further information received from FedEx and Fed Ex Office revealed that FedEx received the parcel from a shipper at a FedEx Office location in Orange, California. Orange is a city that borders Santa Ana.

from Target Phone 3, but the content of the message was not provided by Verizon. As mentioned above, the Parcel was received by FedEx at approximately 4:45, shortly before the above-mentioned MMS message. Based on my training and experience, I am aware that individuals sending contraband or drug proceeds via mail or delivery service commonly send conspirators tracking information which can be used to verify that a package was sent, and also to determine the arrival date of a package. Based on the timing of this MMS messages, I believe it is likely that the user of Target Phone 3 sent a photograph or screenshot of FedEx tracking information to Distel. On September 8, 2022, at 4:51 p.m., a text message reading "Ty" was sent from Target Phone 1 to Target Phone 3. I am aware that "Ty" is an abbreviation commonly used in text messages which means "thank you." Thus, I believe that Distel was thanking the user of Target Phone 3 for sending the tracking information.

    28.    The chart below contains a series of text messages from September 10, 2022, between Target Phone 1 and Target Phone 3.

| Date/Time | Sender | Receiver | Text Message Content |
|---|---|---|---|
| 9/10/2022 12:20 a.m. | Target Phone 1 | Target Phone 3 | Ok can you get me a little fet plz. I just need like a couple grams and I'll pay for it obviously and then I'm gonna need another box to go out Monday |
| 9/10/2022 12:22 a.m. | Target Phone 3 | Target Phone 1 | Ok I will arrange that an call my homegirl right now . Should I tell her a 3;pak? |
| 9/10/2022 12:22 a.m. | Target Phone 1 | Target Phone 3 | Perfect |

29. My analysis of the above text messages is as follows:

    a. "Fet" is a slang term commonly used to refer to fentanyl. According, when Distel asks for "Fet" she means fentanyl.

    b. This investigation has revealed that Distel uses and distributes controlled substance. Thus, when Distel asks for a "couple grams," she's asking for a small amount of fentanyl, likely for her or someone else to consume.

    c. When Distel stated, "I'm gonna need another box to go out Monday," she meant that she needed the user of Target Phone 3 to send another parcel of controlled substances either by mail or shipping service.

    d. I believe that when the user of Target Phone 3 stated, "[o]k I will arrange that an call my homegirl right now . Should I tell her a 3;pak?" meant that she would arrange another shipment of controlled substances for Distel and was asking to confirm whether Distel wanted a "3-pak." As noted above, the seized Parcel was found to contain three packages of controlled substances – two containing methamphetamine, and one containing fentanyl. Accordingly, I believe that in the above text conversation, the user of Target Phone 3 was confirming that Distel wanted to get another parcel with the quantities of methamphetamine and fentanyl.

30. The chart below contains a selection of text messages between Target Phone 1 and Target Phone 3 from September 10, 2022.

| Date/Time | Sender | Receiver | Text Message Content |
|---|---|---|---|
| 9/10/2022 14:14 | Target Phone 1 | Target Phone 3 | Supposedly the package is lost |
| 9/10/2022 14:20 | Target Phone 1 | Target Phone 3 | Yes |

| | | | |
|---|---|---|---|
| 9/10/2022 14:24 | Target Phone 1 | Target Phone 3 | No the one you sent day before yesterday |
| 9/10/2022 14:24 | Target Phone 1 | Target Phone 3 | My bad |
| 9/10/2022 14:25 | Target Phone 1 | Target Phone 3 | The one that has to be picked up |
| 9/10/2022 14:25 | Target Phone 1 | Target Phone 3 | The one you sent yesterday landed |
| 9/10/2022 15:18 | Target Phone 3 | Target Phone 1 | What package, the one I sent yesterday? |

31. My analysis of the above text messages is as follows:

   a. As noted above, law enforcement seized the parcel sent to Doucette on September 9, 2022. Accordingly, I believe that when Distel stated, "[s]upposedly" the package is lost," she meant that the Parcel sent to Doucette on September 8, 2022, had been lost.

   b. When Distel stated, "[t]he one you sent yesterday landed," she meant that a different parcel sent by the user of Target Phone 3 had reached its destination. Accordingly, I believe that the user of Target Phone 3 has sent other packages of controlled substances for Distel and Distel's associates.

32. Location information for Target Phone 1 indicates that Target Phone 1 is currently located in California.

33. Based on the shipping location of the Parcel, I believe that Target Phone 3 is likely to be located in California.

34. In my training and experience, I have learned that **Verizon Wireless and T-Mobile** are companies that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide

12

service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

35. Based on my training and experience, I know that **Verizon Wireless and T-Mobile** can collect cell-site data, about the Target Phones. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication.

36. Based on my training and experience, I know that **Verizon Wireless** can also collect per-call measurement data, which Verizon also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site

data. Such information may be used to assist in the surveillance, identification, and apprehension of the users of the Target Phones. Surveillance of the users of the Target Phones, conducted with the assistance of location information, can also be used to locate residences, vehicles, or other physical locations associated with and used by the users of the Target Phones. Such surveillance can assist the investigation in revealing locations where evidence of the crimes being investigated may be kept.

37. Based on my training and experience, I know that wireless providers such as **Verizon Wireless and T-Mobile** typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as **Verizon Wireless and T-Mobile** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the user or users of the Target Phones and may assist in the identification of co-conspirators and/or victims.

38. I am aware that a pen register Order was previously entered by the Court with respect to the Target Phone on August 23, 2022, for a period of 60 days. *See In the Matter of the Application of the United States of America for an Order Authorizing the Installation of a Pen Register and Trap and Trace Device on Telephone Number (949) 991-0381,* No. 2:22-mc-00130-KFW. In the United States' application for the pen register Order, an Assistant United States

Attorney certified that the information likely to be obtained is relevant to an ongoing criminal investigation conducted by the DEA. *See* 18 U.S.C. §§ 3122(b), 3123(b). Accordingly, to the extent that execution of this warrant requires collection of pen register/trap and trace data, collection of such data is authorized by the existing pen register Order.

39. I am aware that a pen register Order was previously entered by the Court with respect to Target Phone 3 on September 27, 2022, for a period of 60 days. *See In the Matter of the Application of the United States of America for an Order Authorizing the Installation of a Pen Register and Trap and Trace Device on Telephone Number (714) 927-6387,* No. 2:22-mc-00206-KFW. In the United States' application for the pen register Order, an Assistant United States Attorney certified that the information likely to be obtained is relevant to an ongoing criminal investigation conducted by the DEA. *See* 18 U.S.C. §§ 3122(b), 3123(b). Accordingly, to the extent that execution of this warrant requires collection of pen register/trap and trace data, collection of such data is authorized by the existing pen register Order.

## **AUTHORIZATION REQUEST**

40. Based on the foregoing, I request that the Court issue the proposed search warrants, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

41. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Phones would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify

confederates, and flee from prosecution. See 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. See 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

42. I further request that the Court direct **Verizon Wireless and T-Mobile** to disclose to the government any information described in Attachment B-1 and B-2, respectively, that is within the possession, custody, or control of **Verizon Wireless and/or T-Mobile**. I also request that the Court direct **Verizon Wireless and T-Mobile** to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B-1, and B-2 unobtrusively and with a minimum of interference with **Verizon Wireless**' and **and T-Mobile's** services, including by initiating a signal to determine the location of the Target Phones on **Verizon Wireless'** and **and T-Mobile's** networks or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate **Verizon Wireless and T-Mobile** for reasonable expenses incurred in furnishing such facilities or assistance.

43. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Phones outside of daytime hours.

Respectfully submitted,

_____
Michael Gagnon
Special Agent
Drug Enforcement Administration

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedures

Date: Sep 30 2022

City and state: Portland, Maine

Judge's signature

Karen Frink Wolf,  U.S. Magistrate Judge
Printed name and title